Carl Kerber, Appellant, v. W. A. Rowe et al.—156 S. W. (2d) 925.

Division Two, December 16, 1941.

*E. McD. Stevens* for appellant.

1126

*A. E. L. Gardner* for respondents.

 BARRETT, C.—This is a suit by Carl Kerber against his mother's executor, E. R. Riemeier, his sister, Vera Waterhout, his half brother, W. A. Rowe, his half sisters, Zula Myers and Hazel Wade,

and the W. A. Rowe Floral Company, a corporation. The purpose of the suit is to have himself declared the beneficiary of a trust and the owner of twenty-four shares of stock, of the value of $24,000, in the W. A. Rowe Floral Company. The trial court sustained a demurrer to his petition for the reason that it failed to state a cause of action. He refused to plead further and the final judgment, from which he appeals, was entered.

The allegations upon which he relies as stating a cause of action are as follows:

Prior to 1915 his father, John P. Kerber, and W. A. Rowe were partners in the floral business. His father died on January 31, 1915, and W. A. Rowe became the administrator of his estate. Rowe, as administrator, made a false affidavit that his father's personal estate did not exceed in value $200, when in fact his interest in the partnership was worth thousands of dollars; that the only asset listed as belonging to John Kerber was an undivided one-half interest in the 11:12 acres of land rented to the floral company and upon which the greenhouses were constructed. That Rowe made false settlements as to the cost of operating the floral business "for the purpose of deceiving the plaintiff's mother, Elizabeth Kerber, into believing that the business was of no value." Carl Kerber then alleges that when Rowe made final settlement of the partnership estate he appropriated all the personal assets of the partnership.

The petition states that on March 6, 1916, his mother was appointed his guardian by the Probate Court of St. Louis County. He was then fourteen years old. That at that time he had an interest in the floral partnership, but that the only asset listed in his estate as a minor was an undivided one-fourth interest in the 11:12 acres of land which was subject to the dower and homestead rights of his mother. He then alleges that Rowe caused his mother to petition the probate court for permission to sell the 11:12 acres and that Rowe became the purchaser, "paying nothing therefor at the time, but giving his notes for the entire purchase price thereof."

It is charged that in 1916 his mother, W. A. Rowe and Rowe's wife organized the W. A. Rowe Floral Company corporation with a capital stock of $20,000, divided into two hundred shares. Real estate, including the 11:12 acres, conveyed to the corporation represented the paid up stock. The plaintiff states that the corporation took over all the personalty of the partnership, as well as the real estate; that W. A. Rowe appropriated one hundred seventy-five shares of the stock; that twenty-four shares were issued to his mother and one to Rowe's wife; "that the twenty-four shares issued to Elizabeth Kerber were in truth and in fact the property of this plaintiff, because this plaintiff had at said time an undivided interest in the Rowe and Kerber partnership, and that said Elizabeth Kerber, by reason of her position as guardian of the plaintiff, and by

reason of her fiduciary capacity, received said stock as the property of plaintiff, and held the same as trustee for the plaintiff.'' He then says that he and his sister, Vera Waterhout, were entitled to receive fifty shares of stock and that Rowe was entitled to receive one hundred shares and is now trustee for the plaintiff of twenty-six shares.

Finally, it is alleged that plaintiff's mother died on July 16, 1939, and has attempted to will the twenty-four shares of stock to the plaintiff, his sister and two half sisters in equal shares, which she had no right to do, and that her executor is threatening to sell the stock for the alleged purpose of paying debts and that Rowe intends to become the purchaser.

It will be observed from the above synopsis of the plaintiff's petition that he was thirteen years of age when his father died in 1915; that he was fourteen when his mother was appointed his guardian; and that he was twenty-one in 1923 and thirty-seven when this suit was instituted in 1940.

The respondents contend that the acts of which the plaintiff complains took place twenty-four years prior to the filing of his suit and that, therefore, his claim is barred by the statute of limitations. [Secs. 1013-1014, R. S. Mo. 1939, 2 Mo. Stat. Ann., pp. 1139, 1143.]

The appellant's position is that as between the trustee and his cestui the statute of limitations never runs; that if the statute does run it did not begin until his mother died and attempted to dispose of the stock; that the plaintiff's cause of action did not accrue until his damages were sustained and capable of ascertainment (Sec. 1012, R. S. Mo. 1939, 2 Mo. Stat. Ann., p. 1136); and that, the defendants being strangers to the trust, the statute of limitations never ran in their favor.

The difficulty with this appeal and the question of whether or not the statute of limitations is applicable comes about through a failure to distinguish between resulting and so-called constructive trusts. The parties here treat them as the same, possibly because they are both sometimes called ''implied'' trusts.

''A resulting trust is to be distinguished on the one hand from an express trust and on the other from a constructive trust. An express trust is created only if the settler manifests an intention to create it, although the manifestation may be made by conduct as well as by words. A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he *does not intend* that the person taking or holding the property should have the beneficial interest in the property.'' [3 Scott, Trusts, sec. 4041, p. 2163; 2 Restatement, Law of Trusts, sec. 404, p. 1250.] ''*Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises.*'' Restatement, Restitution, sec. 160, p. 640;

"The constructive trust may be defined as the device used by chancery to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs. . . . It must express the idea that the defendant has been under an equitable duty to give the complainant the benefit of the property ever since the defendant began to hold unjustly. . . . Obviously the constructive trust is not the product of the intent of the parties." [3 Bogert, Trusts, sec. 471, p. 1451-1453.] A constructive trust is a remedial institution as distinguished from substantive, the latter being typically exemplified by an express trust. [33 Har. L. R. 420.]

Though these distinctions have not always been scrupulously observed by our courts they have been recognized and stated. [Parker et al. v. Blakeley, 338 Mo. 1189, 93 S. W. (2d) 981; Ferguson v. Robinson, 258 Mo. 113, 167 S. W. 447; Leahey v. Witte, 123 Mo. 207, 27 S. W. 402.] For a criticism of Missouri cases and of certain authors for failure to observe the differences see 2 Bogert, Trusts, sec. 451, pp. 1346-1348; 27 Har. L. R. 437.

█ Certainly the plaintiff's allegations as to W. A. Rowe fall within the above definitions of a constructive trust. It is charged, as to him, that as the administrator of the partnership estate and subsequently he appropriated to the floral corporation the personal property of the partnership which belonged to the plaintiff's father and of which the plaintiff was an heir. As we understand it he is thereby accused of breaching a fiduciary relationship, at least while he was acting as administrator of the partnership. The subsequent allegation that he personally appropriated the stock and gave personal property, which belonged to someone else, to the corporation is a charge of conversion. If the charges are true, Rowe was certainly guilty of unjustly enriching himself and the corporation out of that which justly belonged to the plaintiff and in such a manner as to entitle the plaintiff to restitution, unless his claim is barred by the statute of limitations.

The same is true of the allegations with respect to his mother. He expressly charges that she received the twenty-four shares of stock, which in fact belonged to him, by reason of her fiduciary capacity as his guardian. [3 Bogert, Trusts, sec. 481, pp. 1505, 1506; 3 Scott, Trusts, sec. 495, pp. 2410, 2411; 65 C. J., secs. 226, 229, pp. 476-479, 483-487; In re Kelley's Estate, 213 Mo. App. 492, 255 S. W. 1064.] He does not say she converted them, but that is the only construction one could reasonably give the allegations, especially in view of the fact of her disposing of the same shares by her will.

Our construction of the petition is that it charges the defendants with holding property which equitably they should convey or give to the plaintiff; otherwise they are and will be unjustly enriched at his expense. Such a charge calls for the application of and describes the equitable remedy designated a constructive trust. [Keeton's Heirs

v. Keeton's, Admr., 20 Mo. 530; Smith v. Ricords, Administratrix, 52 Mo. 581; Ricords, Admx. v. Watkins, 56 Mo. 553; Landis v. Saxton, 105 Mo. 486, 16 S. W. 912; Shelby County v. Bragg, 135 Mo. 291, 36 S. W. 600; Johnson v. United Railways Co. et al., 243 Mo. 278, 147 S. W. 1077; County of Howard v. County of Moniteau et al., 336 Mo. 295, 78 S. W. (2d) 96; Johnston v. McCluney (Mo. App.), 80 S. W. (2d) 898.]

The case is unlike Hynds v. Hynds, 253 Mo. 20, 161 S. W. 812; Hynds v. Hynds, 274 Mo. 123, 202 S. W. 387; and Stoff v. Schuetze et al., 293 Mo. 635, 240 S. W. 139, in which the fiduciaries admittedly held the property for the benefit of another, thereby creating a resulting trust, if not an express trust. [4 Bogert, Trusts, sec. 953, pp. 2768, 2769.] It is unlike Orr v. St. Louis Union Trust Co., 291 Mo. 383, 236 S. W. 642, and Ewing v. Shannahan, 113 Mo. 188, 20 S. W. 1065, both of which were resulting, if not express trusts. Nor is it comparable to Elliott v. Landis Machine Co. et al., 236 Mo. 546, 139 S. W. 356, which was a resulting trust of personal property.

Holding, as we do, that the plaintiff seeks to charge the defendants as the trustees of a constructive trust, the statute of limitations is applicable to him and to his cause of action unless there is some allegation in his petition precluding its application. "The right to enforce a constructive trust may be terminated as a result of the plaintiff's laches, or the running of the Statute of Limitations, or by other defenses which terminate the plaintiff's right to restitution." [Restatement, Restitution, sec. 179, p. 722; 4 Bogert, Trusts, sec. 953, pp. 2766-2768; 3 Scott, Trusts, sec. 481, pp. 2355-2356; 1 Perry, Trusts, sec. 230, pp. 404-405; 34 Am. Jur., sec. 108, pp. 88-89.] This is particularly true of constructive trusts based on detected fraud, or when the plaintiff relies on facts of which he has long had full knowledge. When the fraud is perpetrated or when he obtains and has full knowledge of the facts upon which he relies as creating a constructive trust his cause of action is complete and since he is fully aware of it there is nothing to prevent the statute from running. And, the question of which statute should be applied is determined by the nature of the claim. [Keeton's Heirs v. Keeton's, Admr., supra; Smith v. Ricords, Admr., supra; Landis v. Sexton, supra; County of Howard v. County of Moniteau, supra.]

Carl Kerber was thirteen when his father died in 1915. He was fourteen when his mother is alleged to have violated her duties as his guardian by selling the land and taking the stock in her own name and when Rowe converted the property. He was, therefore, under such a disability as ▇▇▇ to prohibit the running of the statute until he reached his majority in 1923. As we understand it, he was thirty-seven when this suit was instituted in 1940, so that sixteen or seventeen years elapsed after his majority and before he sought restitution.

There is no allegation in the petition that he had no knowledge of the facts upon which he relies or that knowledge of them came to

him within the time allotted by either the five or ten year statute of limitations. Nor does he say that the facts had been fraudulently concealed from him. [Shelby County v. Bragg, 135 Mo. 291, 298, 36 S. W. 600.] In fact his argument here is, at least as to the twenty-four shares held by his mother, that he "sustained no damages resulting from his mother's taking the certificate(s) in her name, until she attempted to dispose of it by her last will." We submit, however, that it is not damages and the testamentary disposition of the stock of which he does or could complain, but is the wrongful conversion of his stock and property, which is alleged to have occurred in 1916. So far as the petition is concerned he may have always known the facts and, for that matter, it is difficult to assume, at least in the absence of appropriate allegation, that his mother had concealed the facts from him all that time. [Johnson v. United Railways Co., 243 Mo. 278, 297, 147 S. W. 1077.] The fact that the petition shows there was no repudiation of the trust by his mother does not alter the consequences. There is nothing in the petition to show that she ever acknowledged the existence of a trust. If she had we would have an entirely different problem. The important question here is whether or not the petition alleges any reason or excuse sufficient to toll the running of the five or the ten year statute of limitations. The plaintiff's petition wholly fails to state any fact or circumstance tolling the statute and the trial court properly sustained a demurrer to his petition

The judgment is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.