LOU C. GWIN, RESPONDENT, v. FRANCIS GWIN, APPELLANT.—219 S. W. 2d 282.

Kansas City Court of Appeals. Opinion delivered March 7, 1949.

*Nolan M. Chapman* and *Don Chapman* for appellant.

784

*Kitt & Lintner, Randall R. Kitt* and *Wilder Lintner* for respondent.

DEW, J.—Respondent instituted a suit in equity against the administrator of her deceased husband's estate to recover $1216, which she claimed was her separate property in the care and custody of the deceased as trustee for her at the time of his death, and commingled and mixed with the assets of his estate, and for a decree impressing the assets of the estate with a lien for the payment of the said sum, with interest, and for an accounting. Judgment was for the plaintiff for $1216, with interest at 6 percent per annum, and costs, and the judgment declared a lien, as prayed.

The following salient facts are disclosed by the evidence or by the admissions of the parties: Respondent, the plaintiff, was married to D. C. Gwin June 15, 1933, and they lived together as husband and wife until his death May 19, 1946, in Livingston County, Missouri. Both had been previously married, and each had children by previous marriage. The defendant, appellant, was, on July 19, 1946, duly appointed and qualified as administrator of the estate of D. C. Gwin, deceased. The deceased left an estate inventoried and appraised at $15,171.39.

Prior to respondent's marriage to D. C. Gwin she was the sole owner of a certain residence property in Chillicothe, Missouri. In September, 1940, respondent and deceased began negotiations for

the sale of the above residence property to one Jerry Wood. Mr. Wood carried on most of these negotiations with Mr. Gwin, Mrs. Gwin and their attorney. The conversations were largely between Mr. Gwin and the attorney, but respondent was present and participated therein. During the negotiations Mr. Gwin had several times stated to Mr. Wood that the property belonged to his wife and her heirs, and at one time suggested that the deed be placed in escrow; that he was getting along in age and was not well; that he wanted his business kept straight; that the money belonged to his wife and her heirs, and his own property would be divided among his own heirs. At the second meeting regarding the property sale, September 28, 1940, a down payment was made by Mr. Wood. There were present Mr. Wood, Mr. and Mrs. Gwin, their attorney, and a real estate agent. Mr. Wood there delivered a check for $400 as part payment on the property, making it payable to "Mrs. Lou Merrill Gwin". Later, on January 15, 1941, Mr. Wood gave his check for the balance of the purchase price, $816, making it payable to "Mrs. Lou M. Gwin & D. C. Gwin". This payment was made at the local bank and the deed was delivered. Mr. Gwin was present, but it was not definitely established that respondent was, although she was "generally present" at all meetings concerning the sale. D. C. Gwin had a live checking account at the bank, and Mrs. Gwin did not at the time have an account. The record showed a deposit in Mr. Gwin's account of September 28, 1940, of an item of $400, and one on January 15, 1941, of $816. The first check of Mr. Wood, above described, had the endorsement of "D. C. Gwin", and the second one was endorsed "Lou and D. C. Gwin", both endorsements in the handwriting of D. C. Gwin, in the opinion of witnesses. Both checks had "Paid" endorsements of the bank that would correspond with the deposit dates for similar amounts above shown. Defendant offered no evidence except the recorded deed referred to. This suit was instituted June 16, 1947.

The petition is based, generally, upon the above facts, and for recovery on the theory that thus the proceeds of the plaintiff's sole and separate property were received by D. C. Gwin, her husband, during his lifetime, in trust for her, who continued to hold the same as her property for her protection, until his death; that she had never given him any assent in writing to dispose of the same for his own use and benefit; that after his death she learned that the fund had been mixed and commingled with his own moneys so that it became inventoried and included in the assets of his estate, and that the deceased thereby had become and is to be held as trustee for the plaintiff as to such fund. She alleges that she has no adequate remedy at law; that she is entitled to an accounting, and for a lien, as stated.

Defendant, by his answer, denied specifically the various essential allegations of the petition constituting the alleged trust, and pleaded

that the cause of action alleged in the petition accrued more than five years before the commencement of this action and is barred by Section 1014, R. S. Mo., 1939.

The sole issue submitted in this appeal is whether or not under the law and the evidence the plaintiff's cause was barred by the five year statute of limitations, Section 1014, R. S. Mo., 1939.

The appellant contends that under the pleadings and the evidence the respondent is relying on a constructive trust; that when, without her written assent, her husband received her money (Sec. 3390, R. S. Mo., 1939) her cause of action accrued on that very day; that she then could have sued him as debtor, or in equity, as trustee; that it was the burden of the plaintiff to plead and prove facts exempting her cause of action from the statutes of limitation; and that the constructive trust relied upon is subject to the above statute of limitations and is barred thereby. Section 3390 provides, among other things, that the separate personal property of the wife shall not be deemed reduced to possession by the husband so as to pass title to him, by his care or protection thereof unless with her assent in writing, authorizing him to dispose of same.

It is the contention of the respondent that D. C. Gwin never acquired or claimed title to his wife's funds, and that his mere possession of same was her possession; that it was defendant's burden to establish the defense of limitations; that to do so would require proof of some adverse claim to the trust property by D. C. Gwin to the knowledge of the plaintiff; that the statute would not begin to run until Mr. Gwin had repudiated the trust to the plaintiff's knowledge; that he breached no duty as trustee during his lifetime, and no cause of action arose until his death; that Mr. Gwin's own declarations established the fact that he never claimed any rights contrary to his trust.

The law to be applied herein depends on whether the trust which was established between the plaintiff and her husband D. C. Gwin was an express trust or a constructive trust. Appellant does not here dispute the fact that a trust relation between plaintiff and her husband did arise, and admits that the petition and the evidence "show facts constituting a trust". What the appellant does contend is that the trust was constructive and not express. The significance is that if the trust was express, the statutes of limitation would not apply unless and until the trustee repudiated the trust. Koppel v. Rowland, 319 Mo. 602, 4 S. W. 2d 816, 818. If it was a constructive trust, then, under the general rule, the limitation began to run from the date of the creation of the trust, at which time a cause of action accrued. Landis v. Saxton, 105 Mo. 486. If it was a constructive trust, the suit was outlawed under the five year statute of limitations, Section 1014, R. S. Mo., 1939; Kerber v. Rowe, 348 Mo. 1125, 1131, 156 S. W. 2d 925.

A constructive trust does not arise by virtue of any agreement or intention of the parties, actual or implied, but is implied by law, independently of their intention to create a trust. Suhre v. Busch, 343 Mo. 679, 123 S. W. 2d 8. "Obviously, the constructive trust is not the product of the intent of the parties". Kerber v. Rowe, supra, p. 1130; Bogert, Trusts, Section 471, pp. 451, 453. It is a device or method of the law of equity to effect restitution or to rectify a situation where a party has been wrongfully deprived of some right, title or benefit in property as a result of a fraud or violation of confidence or faith reposed in another. Fraud, actual or constructive, is the essential element of a constructive trust. Little v. Mettee, 338 Mo. 1223, 93 S. W. 2d 1000; Wier v. Kansas City, 356 Mo. 882, 204 S. W. 2d 268; Young v. Kansas City Life Ins. Co., 329 Mo. 130; 43 S. W. 2d 1046.

An express trust "is one which is created by the direct or express words of a grantor or settlor, or *by the intentional act* of the party having dominion over the property, done with a view to the creation of a trust". Sanford v. Van Pelt, 314 Mo. 175, 203, 282 S. W. 1022, (Italics supplied). An express trust in personal property is permissible and may be established by parol. The requirement of Section 3494, R. S. Mo., 1939, that grants and assignments of any trust or confidence be in writing, does not apply to trusts in personal property. Gates Hotel Co. v. Federal Inv. Co., 331 Mo. 107, 114, 52 S. W. 2d 1016. "An express trust may be proved not only by express declarations but also by circumstances from which its existence may be inferred, and to this end evidence of the acts and declarations, either oral or written, of the parties, as well as the surrounding circumstances, may be admitted and considered". Platt v. Huegel, 326 Mo. 776, 782, 32 S. W. 2d 605. "An express trust is created only if the settler manifests an intention to create it, although the manifestation may be made by conduct as well as by words". Kerber v. Rowe, supra, p. 1129.

Under which of these classifications of trusts does the evidence in this case place the relationship between D. C. Gwin and his wife, the respondent, respecting the fund in question? The record shows no dispute on Mr. Gwin's part of the fact that the residence property involved was wholly and solely his wife's separate property. Presumably she desired to sell it and she and her husband met with the prospective buyer numerous times and discussed a possible sale. Various meetings were had regarding the deal at which both Mr. and Mrs. Gwin attended with their attorney, the buyer and the agent. After the first meeting with the buyer, Mr. Gwin clearly stated to him that the property and the proceeds belonged to his wife; that he wished to keep his affairs straight; that he was getting along in age and was in poor health; that he wanted his wife and her heirs to get their property, and that his property would be divided among his heirs.

He suggested that the deed, pending the negotiations, be placed in escrow.

The respondent signed and delivered the deed to her real estate. She was present at the meeting at which the buyer wrote and delivered his check for $400 as a down payment, payable to herself. She is presumed to have been present at the meeting when the buyer executed and delivered his check for $816, the remainder of the money due, payable to herself and husband, and present at the bank when the deed was delivered to the buyer. She knew that she did not retain physical possession of the two checks or clear them. She knew that the checks would require endorsements sufficient to satisfy the bank on which they were drawn, and that she did not endorse either of them. She knew that she had no bank account there of her own at the time through which to clear the checks. There is no evidence in the record of any effort on the part of Mr. Gwin to conceal from respondent any of her rights or interests in the funds, and the transaction was closed openly in the bank with the assistance of one of its officers. After her husband deposited the two checks in his account, the first of which was so deposited in September, 1940, and the second in January, 1941, she never thereafter during his lifetime, a period of over six years, as far as the record shows, made any demand or inquiry of him respecting her funds. She knew that she had never given him title by written consent. Neither does the record show, during all that period, that Mr. Gwin used, converted, disposed of or in anywise made claim to title or ownership of the respondent's trust funds. It is true that he did not segregate the funds and they were thereby mingled with his own, and that, at his death, they appeared to be part of the assets of his estate, but he left an estate of over $15,000, many times the amount of the trust fund, from which such fund could be transferred to her. Holding the fund his own did not, of itself, constitute a repudiation of the trust.

Considering the above uncontroverted facts, together with the existing relationship of husband and wife, we cannot reasonably draw the conclusion from the declarations of the deceased husband, the conduct of the parties, and all the circumstances surrounding their transactions, that Mr. Gwin received and retained care and custody of his wife's funds without her knowledge and consent, nor contrary to her intent, nor by and through any concealment or fraud on his part, nor that he, at any time during the trust period, made or asserted any claim or right to the trust fund or repudiated his trust in any manner. We find none of the elements of a constructive trust. On the contrary, the only reasonable conclusion to be drawn from the evidence is that Mr. Gwin received and retained his wife's funds with her knowledge and consent, pursuant to their mutual intent that he retain the same for her in his care and custody, and that throughout the trust period, and until his death, he never made or

asserted any claim or interest in the trust fund contrary to the trust, or otherwise repudiated it. In other words, the trust was an express trust and no cause of action respecting same had accrued to the plaintiff up to the time of his death, which terminated the trust.

If this were not the law, then the protection afforded the wife under Section 3390, R. S. Mo., 1939, respecting her separate personal property could be easily evaded. If the law were otherwise, a husband, gaining possession of such property under a parol express trust for her benefit, could, by merely holding the trust funds for the period of limitation, acquire full control and benefit of the trust property without any written assent. Under such construction of the law, the wife would be compelled to terminate the trust with her husband or bring suit against him within the limitation period, or allow him thus to put her property beyond her reach and control for all time.

In Smith v. Settle, 128 Mo. App. 379, 107 S. W. 430, cited by appellant, this court held that a constructive trust was established when the husband received his wife's money and used it as his own, but never had the written consent of the wife, and that limitations began to run "the day he received the money"; that "where the husband appropriates the wife's money inheritance as here, she can treat him as a trustee, or simply as a debtor". The inference is evident in the reading of that opinion that the possession taken by the husband was for his benefit, not the wife's, and that the appropriation was contemporaneous with the possession, further indicating that no express continuing trust was intended. Reference to the files in that case discloses that the wife had handed the check to her husband and told him "to use it as his own"; that both had thereafter drawn on it and there was only enough left to pay her funeral bills. The opinion was written by Ellison, J. There are no facts in that case of the conduct and declarations of the parties to show that only an express continuing trust relation was intended, as in the instant case. We do not deem that case analogous to the case at bar.

This court has several times dealt with similar circumstances. In an opinion written by Judge Ellison in Moulden v. Train, 199 Mo. App. 509, 204 S. W. 65, the plaintiff had sued to recover dividends on stock received to her use by the defendant. While in that case the trust relation was evidenced by a letter of the defendant admitting that he held the dividends and was willing to pay the same to the owner when made known to him, the court stated that "An express trust may exist as to personal property and may be shown by parol, as well as by writing". The court said no particular formality was required in the creation of a trust. The opinion quoted with approval the following, at page 511:

"'A person occupying a fiduciary relation, who has property deposited with him on the strength of such relation, is to be dealt

with as an express, and not merely a constructive, trustee of such property. His possession of such property is never in virtue of any right of his own, but is coloured from the first by the trust and confidence in virtue of which he received it. He never can discharge himself except by restoring the property, which he never has held otherwise than upon this confidence .* * * and this confidence or trust imposes on him the liability of an express or direct trustee' ''.

The court quoted further, at page 512:

'' 'Where the possession of property is held by a trustee not by virtue of any personal right or personally asserted right on his part, but is colored by a trust and confidence in virtue of which he received it, the identity of the *cestui que trust* is of very little importance, but the relationship is all important; and, so long as the relation of trust exists, it is a case of express trust, no matter who the *cestui que trust* may prove to be. In the case at bar, it is true that the only duty of the plaintiff's from the start was to pay over one-half of the trust fund to David Sears; yet by their continued acknowledgement of an existing trust relation, and by making no assertion of any adverse claim, they induced a reliance on the existence of the fiduciary relation by virtue of which they expressly held the property' ''.

This court held in that case that the statute of limitations had never run in favor of the trustee.

In the case of Murry v. King, 153 Mo. App. 710, 135 S. W. 107, a mother and son, then the sole owners of farm property, joined in the sale of the same. They had lived on the place as a homestead and the son had married the defendant who became his executrix at his death. The sale price of $16,000 for the farm was in drafts, payable to both plaintiff and her son. Both endorsed the drafts and the entire proceeds were received and retained by the son. Thereafter the son bought another farm out of the above funds and sold it at a net profit of $9000. Only a small part of his mother's share was paid to her during his lifetime. The court below gave judgment to the plaintiff against the son's estate for $4607.52, with interest. This judgment was affirmed by this court. The court set forth that there was no written trust agreement, and no books of the account were kept; that ''there is no suggestion in the evidence of any agreement or understanding between him (the son) and his mother that he was not to handle her money for her use and benefit as her agent. His use of the money was with her knowledge and consent and we think it was mutually understood he was acting as her agent and trustee. At no time did he do or say anything indicative of intent to repudiate his trusteeship and to claim her money as his own''. The court said, (p. 716): ''Not only did he (the son) receive his share but she turned her share over to him under circumstances which clearly

evinced a mutual intent that he should take her money not as a gift but as her agent or trustee to hold and use it for her benefit". The court said there was no direct evidence of a trust agreement, but quoted with approval as follows: " 'A trust of personal property may be created by parol and its existence proved by oral testimony. Courts, however, do not permit such trusts to be established by evidence of a vague or uncertain character. The supporting testimony must be clear, explicit and leave no room for a reasonable doubt that a trust was intended. There must be certainty as to subject-matter, parties and purpose' ". The court held that the circumstances in that case sufficiently showed the existence of the trust, as far as the subject-matter, parties and purpose were concerned, and reviewed the evidence of the close family relationship, trust and confidence existing between the parties, saying: "He used some of that money for her benefit, some for their joint benefit and much for his own benefit but, to his honor, he always recognized his trusteeship and spoke no word suggestive of a purpose to wrong his aged and helpless mother by a denial of her claim upon him". In reference to the application of the statute of limitations to the plaintiff's case, the court at page 718, said:

"Finally defendant argues plaintiff's demand is stale and is barred by the Statute of Limitations. The evidence shows quite clearly that the parol trust contemplated and intended that Nathan should keep and manage his mother's property an indefinite time, and as long as his management was satisfactory to her. She was too old and feeble to attend to her own business, had been accustomed to rely on her son and, no doubt, they mutually understood and intended that their lifelong relationship should continue to her death. It was a continuing trust they created and neither laches nor limitation would begin to run against it until the death of one of the parties or until there was a demand for the fund by the *cestui que trust* and a repudiation of the trust by the trustee. There was no such demand or repudiation and, consequently, limitation did not begin to run until the death of Nathan".

In Orr v. St. Louis Union Trust Co., 291 Mo. 383, 236 S. W. 642, a widow sued her deceased husband's executor, testamentary trustee and heirs to recover her separate funds which she claimed to have delivered to her husband under an oral agreement that he would preserve, care for and invest the same for her use and benefit as her agent and trustee for such purposes. The children of the deceased testified that deceased admitted having received about $100,000 of the plaintiff's separate funds for investment. The court held that such a trust as to personal property could be created and established by parol testimony; that the testimony was sufficient to show *an express trust* as to such funds and that the statutes of limitations did

not run against the widow's claim since no repudiation of the trust was shown to have occurred.

Having, therefore, determined that under the law and the facts D. C. Gwin died in possession of the trust fund under an express trust, and without having repudiated the same during his lifetime, no cause of action had yet arisen on the part of the plaintiff to recover such funds and therefore her present action was not barred by limitation. By the death of the trustee on May 19, 1946, the trust terminated.

The court below found for the plaintiff in the sum of $1216, together with interest at the rate of six per cent per annum. The court did not, however, determine from what date the interest should be allowed. The judgment should provide for interest thereon at six per cent per annum from May 19, 1946, and we so order. Such judgment, as so modified, is hereby affirmed. All concur.