G___ R___ E___, Respondent,

v.

M___ M___ E___, Appellant.

No. KCD 27407.

Missouri Court of Appeals,
Kansas City District.

Dec. 31, 1975.

H. George Lafferty, Jr., Kansas City, for appellant; Lafferty, Horowitz & Shurin, Kansas City, of counsel.

James C. Jarrett, Kansas City, for respondent; Heavner, Jarrett & Kimball, Kansas City, of counsel.

Before SOMERVILLE, P. J., PRITCHARD, C. J., and TURNAGE, J.

PRITCHARD, Chief Judge.

Appellant ex-wife seeks to reverse a decree of specific performance of a separation agreement to convey 160 acres of land in Caldwell County, Missouri, to the ex-husband upon the grounds (Point I) that the ex-wife "entered into the separation agreement while under duress and not of her own free will"; (Point II) that the ex-husband "misrepresented material portions of the separation agreement and defendant entered into that agreement because she relied on those representations"; and (Point III) that the consideration given appellant for her promises to convey property was grossly inadequate and unfair and should not be enforced.

The parties were married December 22, 1944, and seven children, four girls and three boys, were born of the marriage. Appellant worked as a registered nurse off and on since 1943, and respondent worked as a letter carrier. In December, 1963, appellant learned from her 13 year old daughter that respondent had been having an incestuous relationship with her since she was eleven years old. Shortly thereafter, there was an argument and a confrontation about the incest, and according to appellant, respondent admitted to incestuous relationships with two of the daughters. On direct examination one of the daughters testified that respondent had sexual relations with her on more than one occasion. It is under this factual background that appellant raises the defense of duress in her execution of

the separation agreement. As argued by her: "The mother found out about this shocking situation, separated from the father and filed for a divorce. As part of her desperate need to remove her daughters from further danger and avoid public humiliation she entered into a written separation agreement. She signed away her alimony and property rights and her children's financial security while she was distraught, ashamed, confused and frightened." The argument resulted in respondent moving from the home to another residence owned by the parties in Kansas City.

Respondent testified that appellant had mentioned the matter of his molestation of some of the girls. He denied that the girls made complaints to him and that they had made complaints or a statement to the juvenile authorities about his molesting them. Respondent testified that he did not coerce appellant into signing the separation agreement on April 16, 1964.

Shortly after the respondent moved out, appellant employed an attorney whom she saw about three times prior to the decree of divorce, and who drafted the separation agreement for her. The decree granted the custody of the four girls to appellant, and the three boys to respondent. The agreement provided that respondent convey to appellant a house and lot, the family home; and another two-family rental property, upon which was a $1,500 lien which they agreed to pay equally, to appellant. She was to have a 1961 Rambler automobile, all the family household goods and furnishings, and was to receive $200 child support for the four girls, subject to a credit of $150 per month income to appellant on the two-family rental property. Respondent was to receive the residence into which he had moved and was to pay the entire mortgage on it; and the 160 acre Caldwell County farm. Appellant waived her personal maintenance and support payments. Both agreed that the value of the rental property was $8,000, and that if appellant ever sold it, respondent was to have a credit of $8,000 toward child support.

The decree of divorce was granted on April 21, 1964. On December 31, 1967, the family home was destroyed by fire, and appellant collected the entire $10,000 insurance which she had on the house. She then received $2,000 from the sale of the lot. It is not clear from the record, but it seems that the rental property was condemned some 10 years after the separation agreement was entered into by the parties.

The rule of duress as a ground to avoid a contract is set forth in *Wolf v. St. Louis Public Service Company*, 357 S.W.2d 950, 954[4, 5] (Mo.App.1962), cited and relied upon by appellant, "The question in each case is whether or not the victim was so acted on by *threats* of the person claiming the benefit of the contract as to be bereft of the quality of mind essential to the making of a contract, and whether or not the contract was thereby obtained. 17 C.J.S. Contracts §§ 173, 174, 175." (Emphasis added.) In this case there was no evidence of threats that the matter of the incestuous relationship would continue if the separation agreement was not entered into, and there was no evidence that the matter would be publicized upon failure to agree on a property division. All that appears is that the incestuous relationship of respondent with his daughters was the precipitating cause of the separation and respondent's departure from the family home. There is no evidence that he again entered the home or continued the incestuous relationship. Appellant procured the drafting of the agreement from her attorney, and did not tell him of the charge of incest until after the agreement was signed.

There was further evidence that during the four-month period of separation, prior to the signing of the agreement, appellant worked as a registered nurse, taking care of critically ill patients in hospitals pursuant to doctors' orders. She missed no days of work during this period.

Appellant's own attorney discussed the matter of the property settlement agreement with her and on numerous occasions with respondent's attorney. He went over

the provisions of the property settlement agreement with appellant rather thoroughly, and he testified, "She's a rather exacting and specific type of person, as I recall." If he had thought she did not understand the agreement, he would not have advised her to sign it. "Q. Did Mrs. E___ at any time during these negotiations prior to her signing the contract express to you the feeling that she was under duress or being forced to sign this contract? A. Under duress. Well, I think she signed it of her own free will." She did discuss the matter of the child molestation with him prior to the signing of the agreement, and she was an emotional person, easily upset. Appellant's attorney did not have an appraisal of the properties, and his notes did not contain any values, but were concerned with what appellant wanted in the property settlement, which she detailed to him, and she was primarily concerned with keeping the city property.

Appellant's cited case of *Schoen v. Lange*, 256 S.W.2d 277 (Mo.App.1953), does not aid her because as noted at page 282, "Ella signed the agreement notwithstanding competent legal advice and even urging by counsel to the contrary, but with the explanation to counsel that 'it was either a case of signing that agreement or being excommunicated from her church'." All of the evidence here, including the conflicts in testimony which are to be resolved by the trial court under Rule 73.01 3(b) as to credibility, show that appellant exercised her own volition in executing the agreement, and there is insufficient evidence to show that respondent exercised "any form of constraint or compulsion which is sufficient to overcome the will of a person of ordinary firmness and to induce him to comply with a demand to which he would not have yielded if he had been permitted to act of his own volition." *Schoen, supra,* loc. cit. 256 S.W.2d 282[6–8]. Point I is overruled.

What has been stated above as to the facts show that appellant relied upon her own information, and not upon anything that she claims was misrepresented to her by respondent as to the income and values of the rental property. Appellant's claim of misrepresentation rests upon her own testimony, and in this connection it is significant that although she testified that respondent falsely represented to her that the rental property had an $8,000 value, she denied that after the divorce she insured the property for $10,000. That denial was impeached by the production of the insurance policy on the property for $10,000. These matters were for the trial court to determine as to credibility, and no error appears. Point II is overruled.

The claim of inadequacy of consideration again rests upon conflicts in the testimony of appellant and respondent as to values of the property, again a matter for the trial court to determine. Reliance by appellant on *McCarty v. McCarty*, 300 S.W.2d 394 (Mo.1957), is misplaced, because there the wife, not being represented by an attorney, was overreached, and the court was careful to point out at page 402, that " * * * this case is to be distinguished from those where each party was adequately represented by counsel * * *."

The judgment is affirmed.

All concur.