EMERY E. PROFFIT, Appellant, v. FREZENE HOUSEWORTH, R. L. HELVERING, and ABE GOLDMAN, Administrator Ad Litem of the Estate of BESSIE PROFFIT, Deceased, Respondents, No. 41484—231 S. W. (2d) 612.

Division Two, July 10, 1950.

*Leonard Johnson* for appellant.

*Culver, Phillip, Kaufmann & Smith* and *W. J. Sherwood* for respondent Frezene Houseworth; *Abe Goldman* for respondent Abe Goldman, Administrator ad Litem of the Estate of Bessie Proffit.

WESTHUES, C.—This is a suit in equity filed by plaintiff, Emery E. Proffit, against Frezene Houseworth, plaintiff's stepdaughter, R. L. Helvering, and Abe Goldman, administrator ad litem of the estate of Bessie Proffit, deceased, who was plaintiff's wife. The purpose of the suit was to have the court decree that plaintiff's name should have been included in a real estate sales contract and, therefore, title to the property to be in plaintiff. Plaintiff's theory is that the evidence authorized the trial court to declare and enforce a constructive trust. The trial court entered a decree for the defendants and plaintiff appealed. Title to real estate being involved, this court is vested with appellate jurisdiction.

The property, the subject matter of this suit, is located at 704 North 7th Street, St. Joseph, Buchanan County, Missouri. The contract in question was executed on March 28, 1941. By this contract Guy T. Helvering, the then owner of the property, agreed to deed the property to Mrs. Bessie Proffit for a consideration of $2,500. $200 was paid on the purchase price and the balance of $2,300 was to be paid

in monthly installments of $50 each. The payments were to include taxes, insurance, and interest. The balance was to be applied to principal and the payments to continue until the principal was paid in full, at which time a warranty deed was to be executed and delivered to Mrs. Bessie Proffit. Guy T. Helvering died after the contract was executed and the defendant, R. L. Helvering, was vested with a power and duty of executing the deed called for in the contract. Bessie Proffit died intestate on April 29, 1945, before all of the payments under the contract were made. The payments were continued after her death until the principal was paid in full. The question now is to whom shall defendant R. L. Helvering convey title to the property. Plaintiff claims he is the equitable owner because his name should have been included in the contract of sale as one of the purchasers. The defendant Frezene Houseworth claims the property as the sole heir of her mother, Mrs. Proffit.

It will be necessary to relate the circumstances leading up to the signing of the contract and also what was done after the contract was signed. Plaintiff and Bessie Proffit were married when defendant Frezene Houseworth was about two years old. The defendant lived with her mother and stepfather until she was sixteen years old when she was married to Don Houseworth. To this union was born one child who is now about twenty-two years old. This child had the misfortune of being what is termed "a spastic case" and never has been able to walk. From 1937 until about six months after the death of Mrs. Proffit, the Houseworths lived at the home of the Proffits. In 1941 when the contract in question was signed, they lived in a rented house at 1401 Jule Street in St. Joseph. Mrs. Proffit managed the renting of the apartments in this dwelling; one was occupied by the Proffits, another by the Houseworths, and others were rented. After the contract was signed, the Proffits, the Houseworths, and a number of the renters moved to the 7th Street property which was in need of much repair. The Proffits made extensive repairs and improvements and converted the dwelling into about seven or eight small apartments.

All business matters pertaining to the apartments, as well as all business and financial matters affecting the Proffit family, were conducted by Mrs. Proffit. Plaintiff turned over to his wife his pay checks which she cashed and used in paying outstanding bills. Plaintiff was employed at the Goetz Brewery plant where he had worked for many years. His total earning in 1941 was $1,794; in 1944, it was $2,704; and in 1945, $2,334. All of this was turned over to Mrs. Proffit. She bought and paid for all groceries, clothing, and other necessities besides small incidental items such as tobacco used by plaintiff. Witnesses for the plaintiff and those for the defendants were in agreement that plaintiff did not attend to any business matters but left them wholly to his wife. Shortly before the contract of sale

was signed, plaintiff and his wife noticed the dwelling owned by Helvering and after inquiry found it for sale. They were referred to Mr. W. J. Fitzgerald who was the agent for Helvering. After some negotiations concerning the purchase price and the question of payments, the contract now under consideration was signed.

Plaintiff testified that he and his wife while they were considering the purchase of this property agreed to buy it with the understanding that they would remodel the building and convert it into apartments; that plaintiff would do the major portion of the work. He testified that his wife told him to lose no time at the brewery and make all the money he could; that she would attend to the business matters and that would leave plaintiff free to spend his spare time in making the necessary improvements. His testimony was that he requested and his wife informed him that his name would be in the contract as one of the purchasers; that it was a joint enterprise.

The first payment on the contract of purchase and the purchase price of furniture needed for the home on 7th Street was made up of money from various sources. Mr. and Mrs. Proffit had a joint bank account; some money in this account was used. Plaintiff had an old car which he sold for $70; this was used. Much of the furniture in the apartment house where they were then living was sold for about $500; that was used. In that way enough money was obtained to make the down payment on the contract of sale and to purchase furniture then needed. As additional apartments were completed, other pieces of furniture were purchased and paid for by Mrs. Proffit with money she obtained from rent and plaintiff's pay checks. After the parties moved to the 7th Street property, most of the monthly payments on the contract ▮▮▮ were made by checks drawn against the joint bank account.

The agent Lawrence O. Weakley, who had written the insurance on the property during the Helverings' ownership, testified that Bessie Proffit asked that the insurance be changed from her name "to herself and her husband." Note his testimony.

"A. The only conversation I can recall having had with her was her asking for a change in the insurance."

"Q. Can you tell us when that conversation occurred? What was the occasion? How did it happen to come up?"

"A. It was several years ago. I would not try to fix the exact date. The Helverings, as I recall, had the insurance made payable to Mrs. Proffit. Then I was requested by her to change the insurance to herself and her husband."

"Q. Her husband being Emery E. Proffit, the gentleman sitting here?"

"A. Yes, sir."

"Q. What did you do in connection with that request?"

"A. I made the change."

That plaintiff continued to deliver his pay checks to his wife is conceded. Defendant and her husband concede that plaintiff did perform a substantial part of the labor in making the improvements. Some witnesses testified that he worked in the evenings after coming home from the brewery and on Sundays and holidays. The record does not reveal that any dispute arose in the family. The defendant Frezene Houseworth testified that her mother thought a great deal of plaintiff. Note her evidence which follows:

"Q. From what your mother said you never anticipated, did you, Mrs. Houseworth that she aimed to eliminate Emery Proffit from his home or his interest in the home?"

"A. She never said that to me."

"Q. She never said that to anyone in your presence?"

"A. Not in my presence."

"Q. In all of the time you were associated with your mother, and your stepfather, you never heard your mother say that Emery Proffit was to be put in the street, or he could be put out on the street?"

"A. No, my mother thought too much of him."

The evidence shows that the Houseworth and Proffit families were on good terms. Plaintiff testified the Houseworths paid no rent. The Houseworths testified they paid rent to Mrs. Proffit. The amount of rent they paid at the 7th Street property was $26 per month which amount the Houseworths stated was small and that the Proffits were very generous with them. After the contract was signed nothing was said by anyone about who were named as purchasers until some months after the death of Mrs. Proffit.

After Mrs. Proffit died, plaintiff agreed with his stepdaughter that she should attend to all business matters and look after the rental of the apartments; that her compensation should be free rent of her apartment. Both plaintiff and Mrs. Houseworth so testified. This arrangement continued from April to October when through some investigation made by Mr. Houseworth the question of ownership was brought up. Prior to this time no one had applied to the probate court for the appointment of administrator of Mrs. Proffit's estate. Thereafter the plaintiff was appointed.

The question of ownership of the property as between plaintiff and his stepdaughter came about through a letter written by the defendant Helvering to plaintiff. This letter was dated October 3, 1945. It informed plaintiff that his wife's name alone appeared in the contract as purchaser; that if an affidavit were submitted as to names of the heirs, a deed would be executed and delivered to them. This letter when it was delivered at the Proffit home was opened by

defendant Houseworth. Later on the same day, she handed plaintiff the letter and advised him to read it. After he did so, he immediately demanded all his papers and personal effects and instructed Mrs. Houseworth that she no longer had authority to transact his business. This lawsuit followed.

 Fitzgerald who was the agent. for Helvering in the sale of the property was living in the State of California at the time· this case was tried. His deposition was taken and introduced in evidence. Fitzgerald's evidence is more favorable to the defendant Houseworth than that of any other witness including that of the defendant Houseworth. As a rule the trial court is in a better position to judge the credibility of a witness than an appellate court. For obvious reasons this rule does not apply when the evidence is taken by deposition. In examining this witness' evidence, we have concluded that we cannot give it much consideration. We notice in the deposition Fitzgerald testified that during the negotiations for the sale on one occasion while Mr. and Mrs. Proffit and Mr. and Mrs. Houseworth were present, plaintiff stated that his wife was purchasing the property and he (Fitzgerald) asked plaintiff if he wanted his name in the contract and he said he did not. Note the exact questions and answers:

"Q. Did you ever directly ask Mr. Proffit if he wished to have his name on the contract or deed?"

"A. I did."

"Q. You did?"

"A. I did."

"Q. And what did he say?"

"A. He said, no, he did not."

When the defendant Mrs. Houseworth was testifying at the trial, she made the following statements on this same point:

"Q. Mrs. Houseworth, you are not going to tell this Court that you independently recall that Mr. Proffit definitely said to W. J. Fitzgerald that he did not want his name in the contract?"

"A. I never heard him say that."

"Q. That he didn't want anything to do with it and to put his wife's name in?"

"A. I never heard him say that."

There were a number of other earmarks of untruthfulness in Fitzgerald's evidence. He was asked if he was not in the City of St. Joseph at a certain time and he answered that he was not. Two witnesses testified that they saw him at that time in St. Joseph. One witness testified that Fitzgerald's reputation for telling the truth was bad. The most damaging evidence affecting Fitzgerald's credibility is contained in a letter written by him to Helvering while the negotiations for the sale of the property were in progress. In

this letter Fitzgerald stated that the Proffits desired to pay cash for the property; that Mrs. Proffit assumed that she would be able to collect a note she held for $3,000 which would be due in three years; that the note represented a loan on a farm at Savannah, Missouri; that the Proffits drove to Savannah with the expectation of getting the money but that the people refused to pay until the due date of the note; that Mrs. Proffit had sufficient money on hand to pay for the reconditioning of the property. From the record we learn that all of the above statements were wholly untrue. Fitzgerald was misrepresenting the financial condition of the prospective purchasers to his principal. The defendants made no effort to show the statements were true.

Defendants introduced evidence by witnesses, including Mr. and Mrs. Houseworth, that Mrs. Proffit stated her intention to purchase the property on 7th Street for the benefit of her granddaughter whom she intended to have the property after her death. On the other hand a number of witnesses testified that Mrs. Proffit stated that she and her husband were buying the property so that they would have a home of their own.

The conduct of the parties through the years supports plaintiff's contention that the buying of the property in question was a joint enterprise. The insurance on the property was in both names on Bessie Proffit's request. The rent money and the money plaintiff earned at the brewery were spent by Mrs. Proffit in paying whatever bills were due at the time. No account was kept; all money was commingled. Plaintiff made a material contribution to the remodeling of the building by his labor performed before and after working hours and on Sundays and holidays; he made a material contribution in cash in faithfully turning over all his pay checks to Mrs. Proffit.

Defendant Houseworth now claims that her mother, Bessie Proffit, bought the property for herself and her granddaughter and that plaintiff has no interest therein although, as mentioned above, after her mother's death, she (defendant Houseworth) made an agreement with plaintiff to look after the business relating to the apartments and accepted compensation therefor. Such an arrangement assumed that plaintiff was the owner of the property. The defendant Mrs. Houseworth made the final payment on the purchase price of the home. This she testified was done in October, 1945, on the advice of her lawyer.

In cases of this nature where the court reviews the evidence de novo, due consideration is given to the trial court's finding of facts. This court, however, has the responsibility of deciding the case on the merits. After a careful examination of the record in this case, we are compelled to differ with the finding of the trial court.

We are convinced that the purchasing of the 7th Street property by the Proffits was a joint enterprise; that it was the intention of

the Proffits to purchase a home for themselves and to pay for the same by their joint labors; that it was intended in case either of them should die, the other should be the owner. In such a case a court of equity regards that as done which ought to have been done. 30 C. J. S. 507, Sec. 106. That doctrine must be applied in this case. Plaintiff's name should have been included in the contract of sale. Why it was not, whether through design or mistake, is immaterial. Bogert on Trusts and Trustees, Vol. 3, p. 26, section 474. Evidently it was not by design on the part of plaintiff's wife. She apparently was under the impression that plaintiff's name was so included and therefore asked that the insurance policies include plaintiff's name.

Respondents cite Suhre v. Busch, 343 Mo. 679, 123 S. W. (2d) 8, which supports plaintiff's theory. This court, 123 S. W. (2d) l. c. 15 (1-3), after reviewing authorities on the subject, there said: "Upon even a cursory examination of the array of authority on the subject we think it will be found that a constructive trust is the method or formula used by a court of equity as a means of effecting restitution or of rectifying a situation where, as the result of the violation of confidence or faith reposed in another, or fraudulent act or conduct of such other, the plaintiff, who seeks the aid of equity, has been wrongfully deprived of, or has lost, some title, right, equity, interest, expectancy, or benefit, in the property which, otherwise and but for such fraudulent or wrongful act or conduct, he would have had." See Kerber v. Rowe, 348 Mo. 1125, 156 S. W. (2d) 925. Respondents urge that fraud is the very foundation of a constructive trust and that no fraud was proven in this case. If as we have concluded, plaintiff's name should have been included in the contract and it was omitted, such omission constitutes fraud in law often referred to as constructive fraud.

Respondents say that to establish a constructive trust by parol evidence, the evidence must be clear, cogent, and convincing. Such is the rule. Bogert on Trusts and Trustees, Vol. 3, p. 13, section 472; Tobin v. Wood, 159 S. W. (2d) 287, l. c. 290 (4-7).

This court is of the opinion that the evidence, especially that pertaining to the conduct of the parties with reference to the handling of the property, justifies but one conclusion, that is, that plaintiff's name ought to have been included in the contract of sale.

The defendant Houseworth made some payments on the contract of sale after the dispute arose in October, 1945. She should be repaid whatever she so paid.

The judgment of the trial court is, therefore, reversed and the case remanded with directions to enter a judgment in plaintiff's favor; that he be declared the owner of the property and that the defendant Helvering be directed to execute a deed conveying title to plaintiff. The trial court is also directed to ascertain the amount

956

defendant Houseworth paid on the contract of sale ▮ and to enter judgment in her favor for such amount.

It is so ordered. *Bohling* and *Barrett, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.