Larry D. **PARKER, et al.,**
**Plaintiffs/Respondents/**
**Cross–Appellants,**

v.

**Ruth E. PARKER, Defendant/Appellant/**
**Cross–Respondent.**

Nos. 72171, 72237.

Missouri Court of Appeals,
Eastern District,
Division One.

June 30, 1998.

John J. Diehl, Clayton, for appellants.

Eleanor A. Maynard, Scot W. Boulton, St. Louis, for respondent.

GRIMM, Presiding Judge.

The four living children of their deceased father filed this action seeking among other things to quiet title to a condominium unit. They allege that their step-mother improperly used a durable power of attorney to obtain part of their interest in that property. The trial court quieted title and gave step-mother a life estate in the condominium. Further, it decreed that at her death, basically one-half went to her heirs and the other one-half went to father's children,[1] all as tenants in common.

Step-mother appeals and children cross-appeal. Step-mother raises three points; one relates to an alleged failure to make detailed findings of facts, the other two concern the failure to quiet title in her. In their points, children claim that title to the condominium should be quieted in them and step-mother as tenants in common. Pursuant to the directions in Rule 84.14 to finally dispose of the case, we modify the trial court's judgment by quieting title and decreeing that step-mother and each of father's children each receive a one-sixth interest. As modified, the trial court's judgment is affirmed.

## I. Background

Father and a former wife had five children; the children grew up in a house on Mert Street. In 1963, through a straw party, father conveyed the Mert property to his five children. The conveyance to the children, however, was subject to a life estate in father. In addition, father was given the power to sell or "dispose of the fee simple title to the said premises and to convert the proceeds received therefor to his sole use." (emphasis added).

Father and step-mother married in 1976. Shortly before the marriage, father gave each child a copy of the 1963 deed. He told them that step-mother "had sold her house and put the money in the bank for her children and so his money from his house would go to his children." Step-mother acknowledged that she sold the house she had been living in and put part of the proceeds from the sale into a trust for children she had from a prior marriage. She moved into the Mert property and understood that father had a life estate in the house. Further, she understood that upon his death, the house would go to his children. Father had also previously told the children that he wanted the Mert property to go to them upon his death.

---

1. As indicated, plaintiffs are the four living children; one daughter is deceased and she had one son. Although this grandson is not a party, the children do not contest that he is entitled to a share equal to that of the four living children. For ease of reading, we refer to the plaintiffs as children.

In the early 1990's father told the children that he wanted step-mother to receive a child's share of the Mert property. To carry out this plan, in September 1993, father and step-mother conveyed the Mert property to the children[2] and step-mother as tenants in common. This deed continued the life estate in father only and continued to give him the power to sell the property and convert the proceeds "to his sole use."

Father's health had deteriorated. In the summer of 1993, he visited Washington University's Memory and Aging Project. He returned there a year later because of his inability to speak. In July 1994, father executed a durable power of attorney, naming step-mother his attorney-in-fact.

Father's health continued to decline. Step-mother handled father's financial affairs and assets. In May 1995, father and step-mother decided to sell the Mert property because it was too large and it was too much to care for. On May 19, step-mother executed a general warranty deed to the Mert property conveying it to a third party. The deed is signed: "Ralph W. Parker, Sr. by Ruth E. Parker his Attorney-in-fact."

On that same day, the proceeds from the sale of the house were used to purchase a unit in a condominium. The condominium is located at 559 Greenway Chase Drive in Florissant. Although father never told step-mother that he had changed his mind on where the Mert property should go at his death, she had the deed for the condominium unit titled to "Ruth E. Parker and Ralph W. Parker, Sr., his wife (sic)." Also during May, father moved into a nursing home.

Sometime later that year, father's youngest son filed a petition to be appointed father's guardian. Also, the children filed this action, seeking an accounting by step-mother as attorney-in-fact. In addition, they claimed breach of fiduciary duty, sought a constructive trust, and asked that title to the condominium be quieted. Father died on December 31, 1995. Following a hearing, the trial court quieted title to the condominium.

## II. Motion to Strike Exhibits

Before considering the points on appeal, we must first determine what exhibits are properly before us. With their appeal, children filed six "exhibits": (1) the 1963 deed conveying the Mert property to children, (2) the 1993 deed conveying the Mert property to children and step-mother, (3) a Durable Power of Attorney, (4) a 1995 deed conveying the Mert property, (5), a 1995 deed conveying a condominium, and (6) a Washington University Presumptive Diagnosis.

■ Step-mother filed a motion to strike exhibits 3 through 6 from the record on appeal because they "were not introduced into evidence at trial." The motion was ordered taken with the case. We have reviewed the transcript and find that neither party offered exhibits 3 through 6 and they were not received in evidence by the trial court. Exhibits not offered at trial and thus not received as evidence are not properly part of the record on appeal; as far as our review is concerned, such documents do not exist. *Sydnor v. Director of Revenue,* 876 S.W.2d 627, 629 (Mo.App. W.D.1994); *Eaton v. Eaton,* 637 S.W.2d 799, 800 (Mo.App. E.D. 1982). Step-mother's motion is granted. We will not consider the contents of those four exhibits except as reflected by testimony of witnesses.

## III. Findings of Facts and Conclusions of Law

■ In her first point, step-mother alleges the trial court erred by failing to provide requested "detailed findings of fact and conclusions of law." She contends that we should reverse and remand "with a directive to make specific Findings of Fact and Conclusions of Law."

Rule 73.01(a)(3) applies to bench trials and provides in part:

> If a party so requests, the court shall dictate to the court reporter or prepare and file a brief opinion containing a statement of the grounds for its decision and the method of deciding any damages awarded. The court may, or if requested

2. In the period between the initial deed in 1963 and this deed, one of father's children had died.

This new deed substituted that deceased child's only child for the deceased child.

by a party shall, include in the opinion findings on the *controverted fact issues specified by the party.* (emphasis added).

We first note that step-mother's point alleges error in failing to make detailed findings of fact and conclusions of law. However, as shown above, nothing in Rule 73.01(a)(3) requires a trial court to provide conclusions of law. Rather, that rule pertains only to controverted fact issues as specified by the party making the request.

Here, step-mother filed a request for findings. In the argument portion of her brief, she complains that the trial court did not comply with this specific request:

> Whether [step-mother's] use of the Durable Power of Attorney to sell the Mert property to subsequently purchase the [condominium unit] wrongfully deprived [children] of their survivorship in the Mert property.

Step-mother's request is not for a finding of fact. Rather, it asks for a conclusion. As indicated, Rule 73.01(a)(3) pertains only to controverted facts. The trial court did not err by not responding to step-mother's request. Point denied.

### IV. Quiet Title

■ Step-mother's remaining two points and children's points all allege errors concerning the quieting of title in the condominium unit. For convenience, we consider them together.

Step-mother's points allege trial court error in applying the law and entering a judgment against the weight of the evidence. She argues the 1993 quit claim deed "does not provide to [children] a survivorship interest in the proceeds of the Mert property upon Ralph Parker's death but only a defeasible fee interest in the Mert property subject to Ralph Parker's right to sell, encumber or otherwise dispose of the property during his lifetime. As such, [children's] interest in the Mert property was extinguished when the Mert property was sold prior to Ralph Parker, Sr.'s death."

Children's points also allege error as a matter of law and challenge the sufficiency of the evidence. Among other things, they argue step-mother breached her fiduciary duty as attorney-in-fact by selling the Mert property and using those proceeds to purchase the condominium property for her own benefit. They argue she holds the condominium property in constructive trust for the benefit of herself and children.

■ We begin by examining the identical provisions in the 1963 and 1993 deeds which gave father a life estate in the Mert property and the power to sell or "dispose of the fee simple title to the said premises and to convert the proceeds received therefor to his sole use." Generally, a power of disposition granted to a life tenant does not convert the life tenant's estate into a fee simple estate. *St. Louis Union Trust Co. v. Morton,* 468 S.W.2d 193, 195 (Mo.Div.2 1971). The life tenant can, however, convey fee simple title through a valid sale. *Id.*

Step-mother used the power of attorney to convey the Mert property to a third party. She then used the proceeds of that sale to purchase the condominium. She testified she titled the condominium in the names of "Ruth E. Parker and Ralph W. Parker, Senior, his wife (sic)."

She was aware that the condominium was titled differently than the Mert property. She testified she did this because she felt it was a different home and that it should be titled differently. She acknowledged that father never told her that he had changed his mind about how he wanted the Mert property to go after his death. Further, attorney, the preparer of the power of attorney, testified that there was no provision in the power of attorney for the extinguishment of survivorship rights.

■ The durable power of attorney is not before us. However, testimony established it was executed in July 1994. Thus, it is governed by the Durable Power of Attorney Law of Missouri, section 404.700 *et seq.* RSMo Cum Supp.1993. As such, step-mother acts as a fiduciary. *Miller v. Miller,* 872 S.W.2d 654, 659 (Mo.App. S.D.1994). She is required to exercise good faith, act in father's best interests, follow father's oral and writ-

ten directions, and avoid conflicts of interest. *Id.*

Section 404.710.6 provides in part as follows:

No power of attorney, whether durable or not durable, and whether it grants general powers for all subjects and purposes, shall be construed to grant power or authority to an attorney in fact to carry out any of the following actions unless the actions are expressly enumerated and authorized in the power of attorney:

\* \* \*

(6) To designate or change the designation of beneficiaries to receive any property, benefit or contract right on the principal's death.

We find that step-mother violated section 404.710.6(6) because she effectively changed, without any apparent authorization, father's designation of who should receive the Mert property upon his death. Her testimony established that she sold the Mert property and used the proceeds to purchase the condominium. However, instead of titling the condominium in the same manner as the Mert property, she titled it in her name and father's name. By this action, step-mother did not comply with the restriction in the 1993 deed to convert the proceeds from the Mert property sale to father's sole use. Moreover, she did not exercise good faith, follow his directions, or avoid a conflict of interests.

Further, under both the 1963 and 1993 deeds, father had the power to sell the Mert property "and to convert the proceeds received therefore *to his sole use.*" (emphasis added). Here, the proceeds from the Mert property were not converted to his sole use. Rather, step-mother converted the proceeds from the Mert property and used them to benefit father and step-mother, and, as a result of father's death, ultimately to her benefit.

■■■■ A constructive trust is a remedy used by a court of equity to provide restitution to a plaintiff who has been wrongfully deprived or has lost some title. It is best understood as an equitable remedy used in a variety of circumstances to set aside wrongful ownership gained through real or constructive fraud. *Miller,* 872 S.W.2d at 658.

In *Miller,* grandfather gave grandson a durable power of attorney. Grandson then used that power of attorney to deed grandfather's property to grandson and grandson's wife. *Id.* at 655. Grandson testified he did not consult with grandfather, seek his advice, or get his consent before transferring the property. Grandfather was gravely ill at the time of the conveyance. Grandson testified he conveyed the property to protect it from his father. His father later died and grandfather's health improved. However, grandson's wife refused to reconvey the property to grandfather. *Id.* at 656–58. The trial court imposed a constructive trust on the property in favor of grandfather.

The southern district affirmed and discussed when a constructive trust can properly be imposed. The remedy is not confined to instances where undue influence is alleged. The question was not whether grandson exerted undue influence to achieve control over grandfather's home but, rather, whether his exercise of that control, once achieved, was in breach of his fiduciary obligation. *Id.* at 659. The court noted the power of attorney did not expressly enumerate and authorize grandson to make a gift of grandfather's property or change the survivorship rights to the property. Not being so empowered, grandson was without authority to convey the property beyond grandfather's reach. *Id.* at 659.

Our case is similar to *Miller* because step-mother was without explicit authorization to change the survivorship interests in the Mert property. Under the unique facts of this case, we find that step-mother violated her fiduciary obligation imposed under the Durable Power of Attorney Law of Missouri.

We recognize that some language in the trial court's judgment indicates that it denied children's count seeking a constructive trust. On the other hand, without using the words "constructive trust," the court effectively imposed a constructive trust on the condominium property by awarding step-mother only a life estate in the property, with one-half of the remainder going to her heirs and the other one-half to children.

Among other things, Rule 84.14 directs appellate courts to "give such judgment as the court ought to give. Unless justice otherwise requires, the court shall dispose finally of the case." Thus, pursuant to this rule, we modify the trial court's judgment, impose a constructive trust on the condominium property, and hold that title to that property is vested as follows: One-sixth to step-mother and one-sixth each to each of the children, all as tenants in common. As so modified, the trial court's judgment is affirmed. Costs assessed one-half to children and one-half to step-mother.

PUDLOWSKI and GARY M. GAERTNER, JJ., concur.