John C. BROWN and Pam K. Heitman, Respondents,

v.

Joseph H. BROWN, Appellant.

No. WD 63547.

Missouri Court of Appeals, Western District.

Jan. 18, 2005.

Patrick M. Cuezze, Kansas City, MO, for appellant.

L. Clay Barton, Oak Grove, MO, for respondents.

Before RONALD R. HOLLIGER, Presiding Judge, PATRICIA BRECKENRIDGE, Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

Appellant Joseph H. Brown ("Joseph" or "Appellant") appeals a judgment of the Circuit Court of Lafayette County, Missouri, imposing a constructive trust on certain Lafayette County real estate in favor of Respondents, John C. Brown and Pamela K. Heitman ("John" and "Pam" or "Respondents").[1] Appellant raises three points of trial court error. In his first two points, he contends that the trial court erred when it imposed the trust because a constructive trust is only proper if there has been a showing of actual or constructive fraud, and because a showing of unjust enrichment alone is legally insufficient to support the imposition of such a trust. In his third point, he argues that the trial court erred in imposing a constructive trust since Respondents failed to meet their burden of proof at trial to establish facts giving rise to such a trust by clear, cogent, and convincing evidence. We vacate the trial court's judgment but remand for entry of a new judgment in favor of Respondents.

As in other court-tried matters, this court will affirm the judgment of the trial court "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Fix v. Fix*, 847 S.W.2d 762, 765 (Mo. banc 1993). "When the trial court has received conflicting evidence, appellate courts should review the facts in the light most favorable to the trial court's order." *In the Interest of M.E.W.*, 729 S.W.2d 194, 196 (Mo. banc 1987). Appellate courts also defer to the trial court's credibility deter-

---

1. This action was originally brought by John and Pam against Catherine M. Brown ("Catherine"), Joseph, and Carolyn M. Clark ("Carolyn"). On August 20, 2002, Joseph and Carolyn were dismissed as defendants, leaving Catherine as the only remaining defendant. Catherine died testate on October 1, 2004, well after the judgment against her had be- come final and her notice of appeal had been filed but before oral argument in this court. On December 7, 2004, pursuant to motion under Rule 52.13(a)(1), this court issued an order substituting Joseph, an heir of Catherine and a successor in interest to her property, as Appellant in the cause. *See Adams v. Mason*, 358 S.W.2d 7, 17–18 (Mo.1962).

minations, "because it is in a better position to not only judge the credibility of witnesses directly, but also their sincerity and character as well as other trial intangibles which may not be completely revealed by the record." *Tichenor v. Vore*, 953 S.W.2d 171, 174 (Mo.App. S.D.1997); *Rule 84.13(d)(2)*. However, "[q]uestions of law are matters reserved for *de novo* review by the appellate court, and we therefore give no deference to the trial court's judgment in such matters." *H & B Masonry Co. v. Davis*, 32 S.W.3d 120, 124 (Mo.App. E.D.2000).

The subject of the lawsuit is approximately twenty acres of rural real estate, on which a modular home, a cabin (improvements to which had been made by John and Pam), a nine-acre lake, and a single-wide trailer are present. The land, which is located about five miles west of Odessa, Missouri, was originally purchased in February 1966 by Catherine and her husband, Edward Brown. There were four children of the marriage: John, Pam, Joseph, and Carolyn. When Edward Brown died on June 24, 1988, his interest in the real estate devolved to Catherine, who became the sole record title owner of the property. By warranty deed dated June 12, 1989, Catherine granted the land to Catherine and her son John as joint tenants with right of survivorship. This deed was recorded on June 14, 1989, in Book 705, Pages 312–313. On October 16, 1997, Catherine executed another warranty deed transferring title to her remaining interest in the land to Catherine and her daughter Pam as joint tenants with right of survivorship. This deed was recorded on February 12, 1998.

John testified that some time in 1999, he and his mother decided that Pam should be properly added as a third joint tenant with right of survivorship. On August 23, 1999, after John had made an appointment for the three of them to confer with a lawyer, they visited the ·Independence, Missouri, law office of Joyce B. Kerber, an attorney, bringing with them a copy of the 1989 and 1997 warranty deeds. Kerber testified that the three asked her to prepare appropriate instruments that would leave the property titled in the names of Catherine, John, and Pam as joint tenants with right of survivorship, and there was similar testimony from John and Pam. According to Kerber, the idea was to "undo the previous warranty deeds and get it all back in Catherine's name so she could make a deed placing both John and Pam on [the deed] as joint tenants with right of survivorship with her." Since Catherine was elderly (78 years old) and in failing health, prior to preparing any documents Kerber met with Catherine out of the presence of John and Pam and questioned her closely to confirm her wishes and to ensure that she was competent and not being subjected to undue influence. Neither John nor Pam spoke to Kerber while Catherine was not also present.

After the meeting of August 23, 1999, Kerber prepared three quitclaim deeds. The first was a quitclaim deed conveying John's interest in the land to Catherine. The second transferred Pam's interest in the land to Catherine, and the third deeded Catherine's interest in the land to Catherine, John, and Pam as joint tenants with right of survivorship. Kerber testified that the first two quitclaim deeds were prepared with the intention of clearing up the prior and conflicting warranty deeds executed by Catherine so the property could then properly be conveyed, via the third quitclaim deed, to Catherine, John, and Pam as joint tenants with right of survivorship. Kerber also prepared a will and a durable power of attorney for Catherine.

On September 30, 1999, Catherine and Pam returned to Kerber's office, where Pam executed the second quitclaim deed and Catherine executed the third quitclaim deed, as well as a will. John was not able to visit Kerber's office that day, and subsequently executed the first quitclaim deed on November 1, 1999. After the three quitclaim deeds had been signed, Kerber forwarded them to the office of the Lafayette County Recorder of Deeds for recordation. Kerber's intention was that the third quitclaim deed be recorded last, so that the property would ultimately be titled in the names of Catherine, John, and Pam as joint tenants with right of survivorship, just as they had requested during their visit on August 23, 1999. Kerber further testified that although it was her usual practice to do so, she did not recall whether she gave instructions to the recorder as to the intended order of recordation.

As misfortune would have it, on November 4, 1999, the Recorder of Deeds recorded the deeds in the reverse order of that intended by Kerber, Catherine, John, and Pam. That is to say, the third quitclaim deed (from Catherine to the three parties jointly) was recorded first, followed by the other two quitclaim deeds (from John to Catherine and from Pam to Catherine) very shortly thereafter. The third quitclaim deed was recorded in Book 867 at Page 1140, while the other two quitclaim deeds were recorded in Book 867 at Pages 1141 and 1142. Unbeknownst to John and Pam, the result of the order of the filing of the deeds was that Catherine held the property in fee simple absolute, leaving them no interest in the property whatsoever.

On April 3, 2002, Catherine granted a durable power of attorney to Joseph and Carolyn. The same day, Catherine executed a beneficiary deed purporting to convey the property, upon her death, to each of her four children (Joseph, Carolyn, John, and Pam) as joint tenants with right of survivorship. This deed was recorded on April 8, 2002, in Book 927 at Pages 872–873. Considered in conjunction with the effect of the prior quitclaim deeds (including the order in which they were recorded), this would have left John and Pam with one-fourth interests in the property on Catherine's death, rather than one-half interests (assuming, of course, they survived Catherine).

Shortly thereafter, John and Pam discovered what had happened. When Catherine subsequently refused to rectify the mistake by altering or revoking the beneficiary deed, their relationship with her deteriorated. On June 12, 2002, John and Pam filed the present action, seeking a variety of equitable relief, including the imposition of a constructive trust and the cancellation of the beneficiary deed, to rectify the mistake made by Kerber and/or the Lafayette County Recorder of Deeds.

A one-day trial took place on September 26, 2003. On October 24, 2003, the trial court issued its judgment, in which it found, "by clear, cogent, and convincing evidence," that "the agreement, intent, and purpose of all the parties in the execution of" the first, second, and third quitclaim deeds "was to ultimately place title in said real estate in Catherine Brown, John Brown and Pam K. Heitman, as joint tenants with right of survivorship." The court further found that the quitclaim deeds were recorded in the wrong sequence "through no fault of the parties" and, as a result of this mistake, Catherine "was left as sole owner of said real estate, contrary to the intention of the parties." After noting that the beneficiary deed of April 3, 2002 "would result in Plaintiffs having less ownership than as set forth" in the third quitclaim deed dated September

30, 1999, the trial court concluded that "equity requires that a constructive trust be imposed to place the parties' ownership as intended by the [third] Quit Claim Deed and to avoid Plaintiffs being defrauded of their interest in the real estate and Defendant being unjustly enriched[.]" The court then revested title to the property in Catherine, John, and Pam as joint tenants with right of survivorship and ordered Catherine to execute a deed consistent therewith. This timely appeal followed.

Appellant advances three points relied on, which we will address out of their original order. Before we do, though, we offer the following observations regarding constructive trusts.

 Technically, constructive trusts are not trusts at all, but equitable devices employed by courts of equity. *Schultz v. Schultz,* 637 S.W.2d 1, 4 (Mo. banc 1982). They arise "by operation of law, or, more accurately, by construction of the court, regardless and independently of any actual or presumed intention of the parties to create a trust[.]" *Id.* (internal quotation marks omitted). "The constructive trust may be defined as the device used by chancery to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs." *Kerber v. Rowe,* 348 Mo. 1125, 156 S.W.2d 925, 927 (Mo.1941) (internal quotation marks omitted). "In a constructive trust the beneficial interest in the property is from the beginning in the person who has been wronged. The constructive trust arises from the situation in which he is entitled to the remedy of restitution, and it arises as soon as that situation is created." *Page v. Joplin Nat'l Bank & Trust Co.,* 363 Mo. 1008, 255 S.W.2d 821, 824 (1953) (internal quotation marks and emphasis omitted).

 Thus a court of equity may impose or declare a constructive trust to provide a remedy in cases where one who " 'has acquired property under such circumstances as make it inequitable for him to retain it' " by making him or her a trustee for the person or persons injured thereby. *Schultz,* 637 S.W.2d at 4. In doing so, the court merely uses the machinery of a trust as a remedial device, even though the actual mechanism used to do so is, in strict contemplation of the law, not a trust. *Id.* "One of the most frequently quoted statements is Mr. Justice Cardozo's: 'A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.' " *Lucas v. Cent. Mo. Trust Co.,* 350 Mo. 593, 166 S.W.2d 1053, 1058 (1942) (quoting *Beatty v. Guggenheim Exploration Co.,* 225 N.Y. 380, 122 N.E. 378, 380 (1919)).

 Turning now to Appellant's points on appeal, we first address his second point, in which he claims the trial court erred in imposing a constructive trust since a showing of unjust enrichment alone is legally insufficient to support the imposition of such a trust. In particular, he asserts that "[d]espite confusion in the case law, unjust enrichment of one party, absent a showing of actual or constructive fraud, is insufficient to invoke a constructive trust." We disagree.

 " 'Unjust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another.' " *Straube v. Bowling Green Gas Co.,* 360 Mo. 132, 227 S.W.2d 666, 671 (1950) (quoting *Hummel v. Hummel,* 133 Ohio St. 520, 14 N.E.2d 923, 927 (1938)). The appellate courts of this state have often recognized the doctrine of unjust enrichment as a valid basis for the imposi-

tion of a constructive trust under § 160 of the RESTATEMENT (FIRST) OF RESTITUTION (1937), which states, at 640–41: "Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises." *See Wallach v. Joseph*, 420 S.W.2d 289, 295 (Mo.1967); *Lucas*, 166 S.W.2d at 1057; *Skidmore v. Back*, 512 S.W.2d 223, 230–31 (Mo.App. S.D.1974). Accordingly, Missouri courts have long held that "a constructive trust is an equitable device to prevent injustice, particularly unjust enrichment." *Cohn v. Jefferson Sav. & Loan Ass'n*, 349 S.W.2d 854, 858 (Mo.1961). Indeed, in most cases,

> the object and purpose of a court of equity in imposing a constructive trust is 'to restore to plaintiff property of which he has been unjustly deprived and to take from the defendant property the retention of which by him would result in a corresponding unjust enrichment of the defendant; in other words the effect is to prevent a loss to the plaintiff and a corresponding gain to the defendant, and to put each of them in [the] position in which he was before the defendant acquired the property.'

*Suhre v. Busch*, 343 Mo. 679, 123 S.W.2d 8, 16 (1938) (quoting RESTATEMENT (FIRST) OF RESTITUTION § 160 cmt. d at 643 (1937)). Point denied.

In his Point I, Appellant contends the trial court erred in imposing a constructive trust since a constructive trust is only proper if there has been a showing of actual or constructive fraud, a breach of a confidential or fiduciary relationship, undue influence, or some other form of wrongful or tortious conduct by the defendant. "Without a showing of actual or constructive fraud," he argues, the trial court "lacked equitable powers to impose a constructive trust."

■ Again, we disagree. While it is certainly true that a constructive trust may arise in such cases, it is not true that a constructive trust may arise *only* under those circumstances. For example, as noted by our Supreme Court in *Estate of Bean v. Hazel*, 972 S.W.2d 290 (Mo. banc 1998), " '[t]here are numerous situations in which a constructive trust is imposed in the absence of fraud.' " *Id.* at 292 (quoting V AUSTIN WAKEMAN SCOTT & WILLIAM FRANKLIN FRATCHER, THE LAW OF TRUSTS § 462 at 303 (4th ed.1989)). Likewise, "[a] finding of a fiduciary, or confidential, relationship is not always a prerequisite to . . . imposing a constructive trust. There are numerous other circumstances in which Missouri courts have imposed a constructive trust." *Fix*, 847 S.W.2d at 766. Finally, it has also been held that "[t]he remedy [of a constructive trust] is not confined to instances where undue influence is alleged." *Parker v. Parker*, 971 S.W.2d 878, 882 (Mo.App. E.D.1998).

In particular, "where the retention of the property would result in the unjust enrichment of the person retaining it," a constructive trust arises "even though the acquisition of the property was not wrongful." SCOTT & FRATCHER, *supra*, § 462.2 at 314. In *Cole v. Morris*, 409 S.W.2d 668 (Mo.1966), for example, an injured employee collected benefits from the second injury fund as a result of an auto accident while on the job. *Id.* at 669. He subsequently recovered damages from a third-party tortfeasor. *Id.* While the statutes did not recognize a subrogation right of the custodian of the second injury fund (the State Treasurer) to recover the money paid to the injured worker, *id.* at 669–70, the Missouri Supreme Court imposed a constructive trust in favor of the treasurer so that the employee would not be unjustly enriched by collecting money from two sources for the same injury. *Id.* at 670–71.

"*Cole* thus holds that a constructive trust is warranted even though the person who was unjustly enriched did nothing wrong in a legal sense." *Shelter Mut. Ins. Co. v. Dir. of Revenue*, 107 S.W.3d 919, 927 (Mo. banc 2003) (Wolff, J., concurring in part and dissenting in part). *See also Wilber v. Wilber*, 312 S.W.2d 86, 91 (Mo.1958); *Hoefel v. Hoefel*, 533 S.W.2d 704, 709 (Mo.App. E.D.1976).

■ Thus contrary to Appellant's argument, it is not necessary that the unjustly enriched party be found to have engaged in legal wrongdoing or have had wrongful or malicious intent. Rather, the touchstone for imposition of a constructive trust is injustice or unfairness, which may take the form or be the product of fraud (actual or constructive), abuse of a fiduciary or confidential relationship, undue influence, or unjust enrichment. This is entirely consistent with not only the express holdings in the cases we have just discussed, but also other Missouri Supreme Court precedent indicating that the constructive trust is a fluid, flexible device which may be employed to remedy many different types of injustice. As the Court observed more than forty years ago, "in decreeing or refusing to decree a constructive trust the court is not bound by an unyielding formula. The equities of the situation must shape the measure of the relief, if any." *Durwood v. Dubinsky*, 361 S.W.2d 779, 790 (Mo.1962). "The forms and varieties of constructive trusts are practically without limit," *Musser v. Gen. Realty Co.*, 313 S.W.2d 5, 9 (Mo.1958), and "no exhaustive catalog can be made of the types of wrongful retention of property which have moved chancery to decree a constructive trust. Wherever equity finds such a wrongful holding, it will give relief, whether the type of injustice be new or old." *Wier v. Kansas City*, 356 Mo. 882, 204 S.W.2d 268, 270 (1947).

In further support of his first point, Appellant also argues that mistake is insufficient to justify the imposition of a constructive trust inasmuch as it is "axiomatic that mistake does not constitute fraud." Appellant is incorrect, as "a constructive trust arises where the title to property is acquired through a mistake[.]" SCOTT & FRATCHER, *supra*, § 462.2 at 314–15. "Just as transfers based on misrepresentation are subject to attack and avoidance by the wronged party, so equity regards many types of *mistake* as grounds for setting aside conveyances and restoring the property to the grantor. One method of accomplishing such restoration is that of declaring the grantee who has obtained his title under a mistake to be a constructive trustee for the grantor." GEORGE GLEASON BOGERT & GEORGE TAYLOR BOGERT, THE LAW OF TRUSTS AND TRUSTEES § 474 at 93 (rev.2d ed. (1978)) (emphasis in original). That is to say, "where property is conveyed by mistake, the grantee is chargeable as a constructive trustee and can be compelled to reconvey the property," SCOTT & FRATCHER, *supra*, § 466 at 343, since the grantee's "[r]etention of the property after discovery of the mistake would be unconscionable." BOGERT, *supra*, § 474 at 94.

Missouri law is in accord with the views of the authors of these two respected treatises, which have been described by our Supreme Court as "the most eminent of authorities" on the subject of trusts. *Cohn*, 349 S.W.2d at 860. In *Proffit v. Houseworth*, 360 Mo. 947, 231 S.W.2d 612 (1950), the Missouri Supreme Court rejected an argument by the defendants that imposition of a constructive trust in favor of the plaintiff as to certain real property was impermissible since fraud, which, they claimed, "is the very foundation of a constructive trust," had never been proven by the plaintiff. *Id.* at 617. Citing § 474 of

the Bogert treatise quoted just above, the Court held that whether the plaintiff's name had been omitted from the contract of sale "through design or mistake" was "immaterial" to the proper disposition of the case. *Id.* Finding that "the evidence, especially that pertaining to the conduct of the parties with reference to the handling of the property, justifies but one conclusion, that is, that plaintiff's name ought to have been included in the contract of sale," the Court proceeded to reverse the trial court's judgment refusing to impose a constructive trust and remanded with instructions that the trial court enter a judgment declaring plaintiff to be the equitable owner of the property and directing the defendant to execute a deed conveying title to the plaintiff. *Id. See also Stratton v. Stratton,* 694 S.W.2d 510, 512 (Mo.App. E.D.1985); *Maize v. Maize,* 652 S.W.2d 751, 753 n. 3 (Mo.App. E.D.1983); *McFarland v. Braddy,* 560 S.W.2d 259, 264 (Mo. App. E.D.1978).

■ Thus, contrary to Appellant's assertions, mistake is a sufficient ground for the imposition and enforcement of a constructive trust. We readily acknowledge the existence of substantial Missouri authority suggesting a contrary result. For example, in the early case of *Ferguson v. Robinson,* 258 Mo. 113, 167 S.W. 447, 452 (1914), the Missouri Supreme Court stated that "fraud, either actual or constructive, is the very foundation" of constructive trusts, "which are accordingly called, by those who delight in garnering expressions from the ripened fields of the classical languages, 'trusts *ex maleficio.*'" Since then, many Missouri cases, some of which are of much more recent vintage, have reflected this outdated view, either directly or by inference. *See, e.g., Beach v. Beach,* 207 S.W.2d 481, 486 (Mo.1947); *Parker v. Blakeley,* 338 Mo. 1189, 93 S.W.2d 981, 988 (1936); *Locke v. Locke,* 901 S.W.2d 912,

915 (Mo.App. E.D.1995); *Matlock v. Matlock,* 815 S.W.2d 110, 114, 116 (Mo.App. S.D.1991); *Beck v. Beck,* 728 S.W.2d 703, 705–06, 708 (Mo.App. S.D.1987); *Rutledge v. Rutledge,* 655 S.W.2d 812, 814 (Mo.App. E.D.1983); *Cave v. Cave,* 593 S.W.2d 592, 597 (Mo.App. W.D.1979). While we do not undertake the task of identifying every such case, we do note that although older Missouri cases limited utilization of constructive trusts exclusively to circumstances involving actual or constructive fraud or the violation of a confidential or fiduciary relationship, Missouri courts, led by our Supreme Court, now recognize, as discussed *supra,* that they may be imposed in broader circumstances, including where the evidence establishes that due to a mistake, the defendant received property belonging to plaintiff under conditions that in equity the defendant ought not be allowed to retain it.

■ And so it is here. As observed *supra,* the trial court found that Catherine accidentally received an undivided fee simple interest in the property as a result of a mistake made by attorney Kerber and/or the Lafayette County Recorder of Deeds. At the moment she received all Respondents' interest in the property and thereby began enjoying an undivided ownership interest in real estate that was not intended to become hers alone, Catherine became subject to a duty to hold the real estate in constructive trust for John and Pam, the equitable co-owners of the property, even though Catherine's acquisition of their ownership interests was not wrongful in and of itself. When Catherine subsequently executed the beneficiary deed, she breached the constructive trust, unjustly depriving John and Pam of a significant portion of their vested present and future interest in the property and unjustly enriching herself in the process. As equity requires that the mistake be remedied by

returning the property to its rightful owners, the trial court did not err in imposing a constructive trust.[2] Point denied.

■ In his third and final point, Appellant argues the trial court erred in imposing a constructive trust since the judgment was against the weight of the evidence and Respondents failed to meet their burden of proof at trial to establish facts giving rise to such a trust by clear, cogent, and convincing evidence. In particular, he claims they "failed to show, by clear and convincing evidence, that the deeds were prepared incorrectly" since there was evidence that it was Catherine's intent that the deeds be recorded in the order they were. Once again, we disagree.

■ As correctly noted by Appellant in his brief, the party seeking the imposition and enforcement of a constructive trust has the burden of establishing the facts that give rise to such a trust. *Aronson v. Spitcaufsky*, 260 S.W.2d 548, 552 (Mo.1953); *Beach*, 207 S.W.2d at 486. Moreover, due to the "public policy in favor of the security of titles and the reluctance of courts to disturb record or other apparent ownership," *Owen v. Smith*, 532 S.W.2d 538, 539 (Mo.App. S.D.1976), and because "the cancellation of a deed calls for the exercise of the most extraordinary power of a court of equity," *Gibson v.*

*Smith*, 422 S.W.2d 321, 327 (Mo.1968), the proof requirements are quite stringent. "To establish a constructive trust, an extraordinary degree of proof is required. The evidence must be unquestionable in character. The evidence must be so clear, cogent, and convincing as to exclude every reasonable doubt in the mind of the trial court." *Fix*, 847 S.W.2d at 765. "[V]ague or shadowy evidence or a preponderance of the evidence is not sufficient. The evidence must be so unquestionable in its character, so clear, cogent and convincing that no reasonable doubt can be entertained as to its truth and the existence of the trust." *Aronson*, 260 S.W.2d at 549.

■ As our Supreme Court has put it, in cases where the clear, cogent, and convincing evidence standard applies, "the court should be *clearly convinced* of the affirmative of the proposition to be proved." *Grissum v. Reesman*, 505 S.W.2d 81, 86 (Mo.1974) (emphasis in original). However, "[t]his does not mean that there may not be contrary evidence." *Id.* Thus, the trial court "may be clearly convinced of the affirmative of a proposition even though it has contrary evidence before it." *In re Estate of Dawes*, 891 S.W.2d 510, 523 (Mo.App. S.D.1994) (citing *Grissum*, 505 S.W.2d at 86). All that is required in constructive trust cases, there-

---

2. We are fully aware that the ultimate facts and circumstances of this case might also have justified the imposition, by the trial court, of a resulting trust. Like a constructive trust, a resulting trust is a species of implied trust because they both arise by implication of law out of the particular circumstances of the case. *Norton v. Norton*, 43 S.W.2d 1024, 1031 (Mo.1931). In contrast, though, a resulting trust is generally "one which the law implies to meet the requirement of justice that a legal status be given to what is the clear intention of the parties[.]" *Id.* (internal quotation marks omitted). " 'A resulting trust arises where a person makes or causes to be made a disposition of property under circum-

stances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein, unless the inference is rebutted or the beneficial interest is otherwise effectively disposed of.' " *Ferguson v. Stokes*, 269 S.W.2d 655, 658–59 (Mo.1954) (quoting RESTATEMENT (FIRST) OF TRUSTS § 404 at 1250 (1935)). Be that as it may, however, since the facts and circumstances in the case *sub judice* properly demonstrate the existence of a constructive trust arising out of a mistake by a third party, it is unnecessary for us to consider the question any further. *See, e.g., Rebel v. Lunsford*, 216 S.W.2d 68, 70 (Mo.1949).

fore, is that "after considering all the evidence, oral and documentary, the court must be completely and fully convinced that [such] a trust was created." *Gardner v. Bernard,* 401 S.W.2d 415, 423 (Mo.1966).

Appellant points to Catherine's testimony that she visited Kerber's law office only to discuss the preparation of a will, not deeds to the property, and that the three quitclaim deeds were recorded in proper order, thereby effectuating her express intent that she become the sole owner of the property so that all four of her children could share it equally upon her death if she still owned it at that time.

As noted in the factual summary provided *supra,* however, there was a wealth of evidence to the contrary. In particular, the sole witness with no particular axe to grind, attorney Kerber, testified that Catherine knew exactly what she was doing and clearly requested that she prepare new quitclaim deeds which, when executed and recorded in the proper order, would leave the property jointly titled in the names of Catherine, John, and Pam. Moreover, if Catherine's true intent was merely to ensure that she regained an undivided fee simple interest in the property, the third quitclaim deed would have been entirely unnecessary, as she would have received such an interest by operation of law upon execution of the first and second quitclaim deeds by John and Pam.

At best, the evidence before the trial court was merely conflicting. The trial court was the sole judge of Catherine's demeanor and credibility, and based on the record before us, could have been completely, clearly, and fully convinced, despite Catherine's subsequent denials and claimed failure to remember, that the true intent of the parties was, beyond any reasonable doubt, to vest title in the subject real estate in Catherine, John, and Pam as tenants in common with rights of survivorship, rather than in Catherine alone in fee simple. *See Estate of Dawes,* 891 S.W.2d at 523–24; *Nolte v. Wittmaier,* 977 S.W.2d 52, 60 (Mo.App. E.D.1998). Finally, *Murphy* directs us to set aside a judgment on the ground that it is "against the weight of the evidence" only when we have a firm belief that the judgment is wrong. 536 S.W.2d at 32. Since we have no such belief and the evidence adduced by Respondents at trial met the appropriate (albeit high) standard of proof, Appellant's third point is denied.

█ Although the trial court's legal reasoning was entirely sound, its original judgment must be vacated due to the death of Catherine after the judgment became final but before the cause was submitted on appeal. Thus, the only issue remaining before us is the proper disposition of this case on remand.

█ Since "equity will compel one who has unfairly acquired and holds a property interest to convey that interest to the one to whom it justly belongs," *Durwood,* 361 S.W.2d at 790, where property is held by one person upon a constructive trust for another, a court of equity will ordinarily specifically enforce the duty of the constructive trustee to convey the property to the other.

> Where property is held by one person upon a constructive trust for another, the latter has the beneficial interest therein. In many cases the beneficiary of the constructive trust can by a proceeding in equity compel the constructive trustee to transfer the property to him in specie; he is entitled to specific enforcement of the constructive trust. This is true, for example, where the title to land or unique chattels is obtained by mistake or fraud.

RESTATEMENT (FIRST) OF RESTITUTION § 160 cmt. e at 644 (1937). *See also* BOGERT,

*supra*, § 472 at 60; *Mercantile Trust Co. Nat'l Ass'n v. Anderson,* 611 S.W.2d 548, 554 (Mo.App. E.D.1981).

Other forms of relief are, however, possible. For instance, the court "may by its own decree revest title in the complainant if it has such power." BOGERT, *supra,* § 472 at 63. *See, e.g., Parker,* 971 S.W.2d at 883. The relief given may also be in the form of cancellation of the deed to the defendant and the quieting of title in the plaintiff. *See, e.g., Price v. Morrison,* 291 Mo. 249, 236 S.W. 297, 302 (1921).

On remand, we leave it to the sound discretion of the trial court to decide which of these forms of relief (or combination thereof) are appropriate. Therefore, we vacate the trial court's judgment of October 24, 2003, and remand the cause to the trial court for its entry of a new judgment, not inconsistent with this opinion, which reflects the subsequent death of Catherine Brown.

All concur.